ELLEN F. ROSENBLUM
Attorney General
CRAIG M. JOHNSON  #080902
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4792
Email:  Craig.M.Johnson@doj.state.or.us

Attorneys for Defendant Oregon Department of Education

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DONNA JO CONINGSBY,<br>M.C., a minor, by and through his parent D.C.,<br><br>Plaintiff,<br><br>v.<br><br>OREGON DEPARTMENT OF<br>EDUCATION,<br><br>Defendant. | Case No.  3:16-CV-00627-HZ<br><br>DECLARATION OF COUNSEL IN<br>SUPPORT OF DEFENDANT'S MOTION TO<br>DISMISS |

I, Craig Johnson, declare:

1.      I am an Assistant Attorney General for the Oregon Department of Justice and

represent Defendant, Oregon Department of Education ("ODE"). I make this declaration in

support of Defendant's Motion to Dismiss. The following is based on my personal knowledge.

1.      Attached as Exhibit 1 is a true and correct copy of the October 15, 2015 decision

by Presiding Administrative Law Judge Mann that ODE was not a proper party to Plaintiff's due

process hearing.

Page 1 -    DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANT'S MOTION TO
            DISMISS
            CMJ/cbh/7408179-v1

2.      Attached as Exhibit 2 are true and correct copies of: (1) Plaintiff's due process complaint and request for hearing dated September 10, 2015 and (2) Plaintiff's amended due process complaint dated November 2, 2015.

3.      Attached as Exhibit 3 is a true and correct copy of ODE's Final Order dated April 9, 2014.

4.      Attached as Exhibit 4 is a true and correct copy of Plaintiff's Petition for Judicial Review pursuant to ORS 183.484 challenging ODE's Final Order (Exhibit 3) in state court.

5.      Attached as Exhibit 5 are true and correct copies of: (1) the Order granting ODE's Motion for Summary Judgment and affirming ODE's Final Order (Exhibit 3) and (2) the General Judgment of Dismissal dismissing Plaintiff's Petition for Judicial Review with prejudice.

**I declare under penalty of perjury that the foregoing is true and correct.**

EXECUTED on May  25 , 2016.


_____*s/ Craig M. Johnson*_____
CRAIG M. JOHNSON
Assistant Attorney General

Page 2 -    DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
CMJ/cbh/7408179-v1

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4792



Kate Brown, Governor

**Office of Administrative Hearings**

7995 SW Mohawk Street
Tualatin, Oregon 97062
PHONE (503) 612-4319
FAX (503) 612-4300

October 15, 2015

Parent of Student

▮▮▮▮▮▮▮▮▮▮▮▮▮ .
▮▮▮▮▮▮▮▮▮▮▮▮▮

Graham M. Hicks
Attorney at Law
Murrayhill Professional Suites
14780 SW Osprey Drive, Suite 280
Beaverton, Oregon 97007

RE:      OAH Case No. DP 15-114

I am writing to address Parent's contention that the Oregon Department of Education (ODE) is a proper party to the pending due process hearing, OAH Case Number DP 15-114. For the reasons that follow, I conclude that Parent's Due Process Hearing Request does not contain any allegations against ODE which may be properly addressed in an IDEA due process hearing. Consequently, ODE is not a party to this hearing. The hearing will proceed, however, with regard to Parent's allegations against the Beaverton School District.

In addressing this issue, I have considered email correspondence from Parent dated September 24, 2015, September 28, 2015, and September 29, 2015. I have also considered a letter submitted on October 5, 2015 by Assistant Attorney General Jake J. Hogue, on behalf of ODE, and a responsive letter submitted by Parent on October 6, 2015.

Parent filed a request for a due process hearing on September 14, 2015. The request asserted that the Beaverton School District violated the Individuals with Disabilities Education Improvement Act of 2004 (IDEA) by failing to allow Parent to meaningfully participate in an Individualized Educational Plan (IEP) team meeting by withholding evaluation reports and test results from the Parent. The request also asserted that the Beaverton School District incorrectly found that Student was not eligible for services under the autism spectrum category of disability. In addition, the request asserted that Parent did not believe that Student's IEP was providing him with FAPE in the least restrictive environment. The request asks that the District be required to reimburse Parent $300 in charges from Student's physician for participation in phone conferences with school personnel and also requests that the District be ordered to conduct a comprehensive evaluation of Student's learning disabilities so that the IEP team can develop a suitable IEP.

In addition, the request asserts that Parent previously filed a complaint with ODE with regard to the District's alleged violations of IDEA. The request asserts that ODE failed to follow the minimum state complaint procedures required by 34 CFR 300.152(4) and (5) and OAR 581-015-2030. Specifically, the request alleges that ODE failed to review all relevant information and failed to address each allegation set forth in Parent's written complaint.

October 14, 2015
Page 2 of 3

Along with the request for due process hearing, Parent submitted supporting documentation, which includes various court pleadings filed by Parent. In that supporting documentation, Parent asserts that Parent filed the complaint with ODE on February 11, 2014 and that ODE issued a Final Order denying the allegations in the complaint on April 9, 2014. The supporting documentation also asserts that ODE denied Parent's request for reconsideration of the Final Order on June 5, 2014.

Parent has provided copies of various court pleadings that establish that Parent filed a Petition for Review Pursuant to ORS 183.484 with the Washington County Circuit Court on August 4, 2014. Parent asserts that the circuit court upheld ODE's Final Order and that the case is now on appeal before the Oregon Court of Appeals.

Parent has not asserted that ODE was directly responsible for providing educational services to Student. Rather, the allegations against ODE relate solely to Parent's contention that ODE failed to comply with legally required state complaint investigation procedures. As a remedy for this alleged defect, Parent has requested that the ALJ "Order ODE to withdraw the defective Final Order in this case and reimburse me for all of the court fees and costs assessed in the Washington County Circuit Court and Court of Appeals for the review of the defective Final Order."

As Parent correctly observes, 34 CFR 300.507(a) (1) allows a parent to file a due process complaint on matters "relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child." Similarly, OAR 581-015-2345(1) (a) (A) allows a parent to request a due process hearing "if the parent does not agree with the identification, evaluation, educational placement of a child, or the provision of a free appropriate education to a child who may be disabled." Parent asserts that these provisions should be read broadly to include not only allegations against the District directly responsible for "the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child," but also to ODE in its role as a State Educational Agency (SEA) under the IDEA.

There appear to be no Ninth Circuit cases which have squarely addressed this issue. However, in *Chavez Rel. M.C... v. New Mexico Public Education*, 621 F.3d 1275 (10th Cir. 2010), the Tenth Circuit Court of Appeals upheld a hearing officer's conclusion that the New Mexico SEA was not a proper party to an IDEA due process hearing:

> We agree with [the SEA] that it, as the SEA not involved in the actual provision of M.C.'s IEP, was properly exempted from the administrative process. Absent a determination that it was providing direct services to M.C. [The SEA] was not responsible for the matters covered by due process hearings. * * * [W]hat matters for purposes of the [hearing officer's] jurisdiction is whether [the SEA] actually was providing direct services. Just prior to the beginning of the administrative proceedings, [the school district] had developed an IEP for M.C. and had convened a meeting to attempt to address some of the parents' concerns. Since the [SEA] was not involved in these activities, the [hearing officer] * * *properly excluded it from proceedings meant to address subjects related to direct education of a child. * * * [G]iven the policy implications of requiring the SEA to intervene in all disputes when the parents claim the [Local Educational Agency] is not

October 14, 2015
Page 3 of 3

providing their child a FAPE, we hold that the SEA need not have been part of the administrative process here and reverse the district court on this issue.

621 F.3d at 1283.

The reasoning of the court in *Chavez* is persuasive and is consistent with the holding of ALJ Ken Betterton in *Student and Oregon Department of Education,* Case No. DP 11-102, *Order Denying Reconsideration* (April 14, 2011) ("The state educational agency (i.e., ODE) is not a party to a due process proceeding unless the state educational agency has the obligation to provide educational services to the child.")

In addition, in a July 23, 2013 memorandum to Chief State School Offices, the United States Department of Education Office of Special Education Programs noted:

[IDEA] regulations are silent as to whether a State complaint decision may be appealed. The regulations neither prohibit nor require the establishment of procedures to permit either party to request reconsideration of a State complaint decision, although * * * the parent * * * may use mediation or file a due process complaint to request a due process hearing to resolve *disputed issues*. (Emphasis added.)

(OSEP Memorandum, July 23, 2013, p. 31.)  In other words, if the issues addressed in the state complaint are not resolved to the parent's satisfaction, the parent may request a due process complaint on those issues. However, nothing in the regulations allow a party to request a due process hearing in order to contest alleged defects in the procedures utilized by an SEA to resolve such a complaint.  Indeed, the language quoted above suggests that a state need not provide any mechanism to address such procedural defects.

Nevertheless, Oregon has established a process for challenging a state complaint.  As noted by Mr. Hogue, a party may contest a Final Order in an ODE state complaint by filing a petition for review in circuit court pursuant to ORS 183.484.  Parent has acknowledged that Parent has, in fact, filed such a petition and the matter is now before the Oregon Court of Appeals.  As I have previously noted, Parent raises serious concerns about the procedures employed by ODE in resolving the complaint.  I do not intend to minimize those concerns or to comment about merit of the case before the court of appeals.  However, that is a matter that is properly resolved by the courts and is not within the scope of a due process hearing request.

As noted previously, the hearing will proceed based solely on the allegations against the Beaverton School District.

Sincerely,


John Mann
Presiding Administrative Law Judge
Office of Administrative Hearings

Cc: Jake Hogue, Assistant Attorney General

Oregon Department of Education
255 Capitol Street NE
Salem OR 97310

Office of Learning/Student Services
Dispute Resolution Section
(503) 947-5689

# Request for Due Process Hearing

This model form may be used to request a Special Education or Early Intervention/Early Childhood Special Education (EI/ECSE) Due Process Hearing.

## 1.   Complainant (Parent/Adult Student/Public Agency) Information

Name(s) _____Donna Jo Coningsby_____

Address____ _____

City/State/Zip___ _____

Telephone number(s)___ _____   FAX number_____

Email address __ _____

Relationship to child__ Mother _____

## 2.   Child Information

Name of Child___ _____   Date of Birth ____6/6/2003___ Grade___7_____

Child's address (or contact information) __ _____

City/State/Zip_ _____

School or Program Child Attends:___ Beaverton School District _____

Disability (optional)_____

## 3.   Legal Representation (if any)

Attorney Name/Firm ___SELF - REPRESENTED_____

Address _____

City/State/Zip_____

Telephone number(s)_____ FAX number_____

E-mail_____

## 4.   Concerns
Describe the IDEA violation and the specific facts that relate to that violation. The complaint must describe a concern(s) that happened within the last 2 years prior to the date that the complaint is received. Include dates, names and locations.   (Attach additional pages if needed.)
**Please check the box(es) and describe your concerns:**

☒ Identification      ☒ Evaluation      ☐ Educational Placement      ☒ the Provision of a Free
Appropriate Public Education to your child

_____Please see attached._____

_____

_____

_____

_____

_____

5. **Proposed Solution:** *(Attach additional pages if needed)*

Please see attached.

_____

_____

_____

_____

6. **Mediation (check applicable boxes)**
   *(optional)*

Mediation is available to parents at no cost and can be entered into with the agreement of the School District. Mediation may proceed concurrently with the complaint investigation process.

☐  I request mediation and authorize the school district and ODE to share educational information with the mediator about my child's identity, educational needs, and information pertinent to the mediation.  I understand the mediator will keep this information confidential.

☐  I would like more information about mediation.

7.   **Scheduling resolution session:**   A resolution session must be scheduled within 15 days of receipt of your request. Indicate dates and times within those 15 days when you would be available to meet for a resolution session.

I am generally able to schedule time away from work given at least one week advance notice, depending on location of session, travel time.

8.   **Scheduling pre-hearing conference:**   30 to 40 days after your hearing request is received; the Administrative Law Judge (ALJ) will hold a Prehearing Conference.   Please provide any information that would assist the ALJ in scheduling the Prehearing Conference.

See (7).  Also, due to hearing impairment I would request information about the number of attendees and room size.  Fewest attendees and smaller conference rooms are best.

**The Due Process Hearing Request <u>must</u> be signed and mailed (or faxed) to both:**

|                                              | **AND:**                               |
|----------------------------------------------|----------------------------------------|
| Assistant Superintendent – Student Services  | Local School District,                 |
| Public Service Building                      | ESD or EI/ECSE Program                 |
| 255 Capitol Street NE                        |                                        |
| Salem, Oregon 97310-0203                     | Name:  Beaverton School District       |
| Fax: 503-378-5156                            |                                        |
|                                              | Superintendent:  Jeff Rose             |
|                                              |                                        |
|                                              | Address:  16550 SW Merlo Rd            |
|                                              |                                        |
|                                              | City:  Beaverton                       |
|                                              |                                        |
|                                              | State/Zip:  OR 97006                   |
|                                              |                                        |
|                                              | Sept. 10, 2013                         |
|                                              | Date                                   |

Signature (required)

cc: Craig Johnson, Asst AG, Dept. of Justice, 1162 Court Street

Oregon Department of Education
Form 581-1184-E (Rev. 10/14)                    The Oregon Department of Education is an equal opportunity agency and employer.

September 10, 2015
Donna Jo Coningsby, parent of minor child in the Beaverton School District

**Request for Due Process Hearing**
**Additional Pages for items (4) Concerns and (5) Proposed Solution**

## Request for Due Process Hearing Item (4) Concerns:

I requested and consented to an evaluation of my son at the beginning of his 5th grade school year. On September 12, 2013, the school personnel and myself agreed during the evaluation-planning meeting that my son's treating physician would provide the necessary medical statement as part of the evaluation. In addition to the evaluation consent form I was asked to sign a records release authorization form naming my son's treating physician in case the school district needed to obtain an explanation of the medical statement.

My son's doctor completed the medical statement shortly thereafter. Over the next two months I sent several written requests to the IEP team about the status of the reevaluation. Specifically, I requested that copies of any reevaluation test results or reports be sent to me and my son's treating physician so that *I* could review the information with my son's treating physician prior to the IEP eligibility determination meeting scheduled for Nov. 19th, 2013.

The school ignored my requests, even after I sent a written request to the special education director herself. Eventually, my son's special education case manager, Mr. Van de Water, told me that the school psychologist, Todd Nicholson, was unable to give me any evaluation test results or reports for "professional reasons" and because they had to be "verbally delivered." Upon learning this I wrote to everyone again on the IEP team, including the school psychologist, Todd Nicholson, and the autism specialist, Shelby Frantz, requesting a copy of any evaluation test results/reports so that *I* could review them with my son's physician prior to the upcoming IEP eligibility determination meeting. I even offered, in writing, to make ***myself*** available to the IEP team in advance of the scheduled IEP meeting so that they could "verbally deliver" the evaluation report to me in person. They ignored my request.

I went to a scheduled appointment with my son's physician and learned that the school psychologist and the autism specialist had contacted him the day before, November 13, 2013 for a teleconference about my son's

Request for Due Process Hearing Additional Pages                               1

September 10, 2015
Donna Jo Coningsby, parent of minor child in the Beaverton School District

evaluation. During the teleconference the school personnel (Nicholson and Frantz) informed my son's physician that they already decided that my son would not be identified as eligible for special education services under the autism spectrum category. My son's physician apparently also received some written evaluation test results/reports via fax from the school personnel, but was unable to give me a copy of what he had received since it had not yet been incorporated into my son's medical file at the time of my appointment.

Upon learning of the teleconference, I again wrote to the IEP team requesting a copy of any evaluation results/reports ASAP as the IEP meeting was only a few days away. I received an explicit refusal on November 15, 2013 in an email from Joan Krug, the special education facilitator, stating that I would only be able to receive the evaluation reports at the beginning of the IEP meeting on November 19, 2013 and not before.

At the IEP meeting on November 19, 2013 I finally received a copy of the long-awaited reports and they "verbally delivered" them, apparently for the benefit of the rest of the IEP team since I am hearing impaired and had to read them while they verbally delivered them to the others at the meeting.

Moreover, when I later (January 2014) requested that the school reimburse me for the $300 in charges assessed by my son's treating physician for the teleconferences with the school personnel on November 13 2013, the school refused. They conceded that their personnel initiated the teleconferences but refused reimbursement claiming (in their prior written notices) that their purpose in initiating the teleconferences was not to obtain an explanation of the medical statement but instead to explain the evaluation results to the physician, and was therefore not part of the reevaluation.

This was news to me as no one from the school district had ever asked for or received my permission to conduct a meeting with my son's treating physician for that purpose. If anything, I was kept in the dark for the entire duration of the reevaluation from the time I signed the consent form on September 12, 2013 until the commencement of the IEP eligibility meeting on November 19, 2013, despite several requests

September 10, 2015
Donna Jo Coningsby, parent of minor child in the Beaverton School District

in writing for copies of any test results or evaluation reports about my
son's reevaluation in advance of the IEP eligibility meeting.

I filed a complaint with the Oregon Department of Education (ODE)
regarding the above.  In the complaint I alleged numerous violations of
FAPE for failing to reimburse me for the costs of the reevaluation, and
for violation of the many procedural safeguards afforded to parents
under the IDEA.

Unfortunately, the complaint was not handled in accordance with the 34
CFR §300.152(4)-(5), which sets forth the minimum State complaint
procedures that a state education agency (SEA), such as the ODE, must
follow in resolving complaints. 34 CFR §300.152 *Minimum State
complaint procedures.*

For example, under subsections (4) and (5) of the minimum State
complaint procedures, the State must
> (4) ***Review all relevant information*** and make an independent
> determination as to whether the public agency is violating a
> requirement of Part B of the Act or of this part; and
> (5) Issue a written decision to the complainant that addresses
> ***each allegation in the complaint*** and contains—
> (i) Findings of fact and conclusions; and
> (ii) The reasons for the SEA's final decision

The state rules are promulgated in Oregon at OAR 581-015-2030.

Under subsection (4), ODE failed to review all relevant information
when if failed to review all of my written correspondence with the
school requesting that copies of any test results/reevaluations be
provided to me in advance of the IEP meeting.

Under subsection (5) ODE failed to address each allegation in my
original complaint.  Because they concluded that they only needed to
review the consent and authorization forms, and concluded that my
signature on the records release authorization form somehow justified
contacting my son's physician for purposes other than obtaining an
explanation of his medical statement, they appear to have also
concluded that none of the other procedural safeguards afforded to
parents under the IDEA applied to my situation.  None of their

Request for Due Process Hearing Additional Pages                    3

September 10, 2015
Donna Jo Coningsby, parent of minor child in the Beaverton School District

conclusions are supported under the IDEA or under the FERPA provisions incorporated into the IDEA. The ODE is obligated to enforce both the IDEA and all of the FERPA provisions incorporated into the IDEA.

The Final Order issued by the ODE has been reviewed by way of Petition for Judicial Review of the Final Order to the Washington County Circuit Court. My efforts to educate the state circuit court judge on the obligations of the ODE under IDEA and FERPA were rejected and the court upheld the Final Order on common law contract grounds. The case is now on appeal before the Oregon State Court of Appeals. I am incorporating into this Request for a Due Process Hearing my entire Petition for Judicial Review of the ODE's Final Order and selected motion papers that set out in abundant detail the facts relevant to this request and the basis for my request for a due process hearing on **_all_** of the school's and ODE's violations of the IDEA and FERPA.

Although I was able to get my son somewhat successfully mainstreamed for the remainder of 5th grade, my son's education has floundered miserably since then. During 6th grade, he failed nearly all of his classes and developed serious school refusal issues, attending only one or two hours each day.

Because the school withheld _all_ of the evaluation reports and test results from me entirely until the commencement of the IEP meeting on November 19, 2013, there was no time afforded to me to review any of the evaluation reports in sufficient detail to point out the errors and shortcomings of reported data and assessments to the IEP team members. Lacking such vital information hampered my ability to meaningfully participate in the November 19, 2013 determination that my son was not eligible for services under the autism spectrum category of disability. The IEP based on his remaining disabilities of other health impaired (OHI) and emotional disturbance (ED) is simply inadequate to address his needs.

My son is now back in a special education placement in 7th grade. But I have no confidence that the IEP is addressing his needs and providing him with a FAPE in the least restricted environment as required by the IDEA. A new reevaluation plan that takes into account _all_ of his learning

Request for Due Process Hearing Additional Pages                                    4

September 10, 2015
Donna Jo Coningsby, parent of minor child in the Beaverton School District

impairments, including non-verbal communication impairments, executive function impairments, and cognitive abilities needs to be developed and carried out in a proper and timely manner.

<u>Request for Due Process Hearing Item (5) Proposed Solution</u>

My proposed solution is as follows:

(1)    Order the ODE to withdraw the defective Final Order in this case and reimburse me for all of the court fees and costs assessed in the Washington County Circuit Court and Court of Appeals for the review of the defective Final Order.

(2)    Order the Beaverton School District to reimburse me for the $300 assessed by my son's physician for the teleconferences with their personnel on November 13, 2013.

(3)    Order the Beaverton School District to conduct a comprehensive evaluation of my son's learning disabilities so that together the school and myself can reach a proper agreement on the identification and eligibility of my son for special education services, and to develop a suitable IEP that will address <u>*all*</u> of his educational needs adequately and in accordance with the IDEA.

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

## Amended Request for Due Process Hearing
### Additional Pages for items (4) Concerns and (5) Proposed Solution

*Note: This amended request incorporates the entirety of the original due process request by reference, including the earlier attachments related to the ODE complaint resolution process. I've added a brief summary of school history and additional details regarding parent concerns, and amended the proposed solution.*

## Amended Request for Due Process Hearing Item (4) Concerns:

### I. Background Prior to enrollment in Beaverton SD

My son was referred for early intervention/early childhood special education services (EI/ECSE) in the spring of 2008 when he was 4 years old through a Morrison Child and Family Services social worker. The social worker was conducting a Child Find community outreach effort at my son's preschool, Bright Horizons, 15150 SW Koll Pkwy, Beaverton, OR 97006 and was working with the preschool teachers to help manage my son's behavior. During that time my son also was in therapy with Dr. Steven Waksman in Portland, OR, a clinical child psychologist, for problem behavior, including hyperactivity and oppositional behavior.

Unfortunately, the Northwest Regional ESD found my son ineligible for EI/ECSE services despite his problem behavior (their evaluation was very cursory) As a result, Bright Horizons subsequently dis-enrolled my son due to his behavior issues related to hyperactivity and inability to follow directions, and oppositional aggression with teachers (no aggression toward peers was observed, just oppositional aggression toward teachers). This was his second preschool failure – earlier attendance at the German American School in Beaverton was also problematic.

I decided on my own to place My son in a very small private kindergarten for 2 days per week, Early Learning Matters in Hillsboro, OR, specializing in addressing behavior problems in young children. He made good progress there academically but continued to struggle with hyperactive and restless behavior. In July of 2009, shortly after my son's 6th birthday, I contacted Dr. Robert George to evaluate my son's mental health and development. In early August of 2009, after an

Amended Request for Due Process Hearing Additional Pages
Page 1 of 19

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

extensive evaluation Dr. George made an initial diagnosis of mood
disorder with ADHD and possible high-functioning autism spectrum
disorder (Asperger's).  He has been under the care of Dr. George ever
since.

## II. Background of enrollment in Beaverton SD First to Fourth Grade

In mid-August of 2009, while under the care of Dr. George, my son
attended the annual Kindergarten Academy offered by our
neighborhood elementary school, Barnes Elementary, to see if he was
ready to start first grade, or whether he should do a year of public
school kindergarten before trying first grade.  The teachers assessed
him and indicated he met all of his kindergarten academic learning
targets and recommended he start first grade.  I told them about his
problem behavior history and asked about getting extra help for his
behavior issues.  They recommended waiting until he tried first grade.

On the first day of first grade my son had a severe panic attack and was
unable to stay in the classroom.  I again asked about getting extra help
for his behavior problems and made a formal request that he be
evaluated for special education.  For several weeks I attempted various
ways of helping him transition into first grade with little or no help from
the staff at Barnes elementary.  The principal, Susan Rodriguez, even
suspended him from school for his behavior.  I complained to Mrs.
Rodriguez that her actions were in violation of Section 504 since the
school was well aware that he was under the care of Dr. George and had
been diagnosed with a mood disorder, ADHD and possible autism
spectrum disorder.

After a very difficult couple of months, during which he missed over two
months of first grade and was hospitalized for 2 weeks at Providence
Child and Adolescent Psychiatry Clinic inpatient unit, he was finally
placed in a self-contained behavior learning class (BLC) taught by Mrs.
Risch in November of 2009 based on both emotional disturbance (ED)
and other health impairment (OHI) categories of eligibility for special
education.  The identification was based on evaluations of Dr. George,
evaluations while an inpatient at Providence and observations of school
staff during the limited time that my son actually attended Barnes.

Amended Request for Due Process Hearing Additional Pages
Page 2 of 19

November 2, 2015                                          OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

After a couple of weeks transition, my son's behavior began improving
and he attended the BLC program for the remainder of first grade and
again, during second grade.  Although he continued to exhibit deficits in
attention and mood, his behavior was mostly stable and he was able to
attend school regularly and without any significant disruption.

Toward the end of second grade my son's pediatrician referred him to
the OHSU Child Development Rehabilitation Center (CDRC) for an
evaluation with a developmental pediatric specialist.  She recommended
and ordered a full psycho-educational diagnostic assessment in May
2011 (for which I paid privately), and I shared the results with the
Beaverton SD BLC teacher, Mrs. Risch.

In third grade, encouraged by the results of the May 2011 report, which
revealed my son's normal to above-average range intellectual ability, I
initiated a dialog with the Mrs. Risch about changing my son's goals to
mainstreaming.  He began mainstreaming for a small portion of his
school-day with Mrs. Martin, a regular education third grade teacher,
and remained in Mrs. Risch's self-contained classroom for the majority
of the schoolday.

Although my son seemed to enjoy being included in mainstream class
for a portion of his schoolday, he continued to have mood problems.
The class sizes were very large, and he began to experience new
problems with repetitive speech, severe finger picking, lack of social
awareness, complaining about "bullies," and increased volatility at
school pickup time.  He also reported for the first time that he started to
read during mainstream (as opposed to participating in class).  Mrs.
Risch said she did not think he was "ready" and I gave up on my goal of
full mainstreaming.

In fourth grade I asked (again) about problems with social skills and
autism evaluation but was told, again, this time by Mr. Vandewater, the
fourth grade BLC teacher and Mrs. Bright (the school psychologist) that
he would not get additional services even if he was evaluated for autism
because he was already eligible under OHI an ED categories.  So I was

Amended Request for Due Process Hearing Additional Pages
Page 3 of 19

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

reluctantly persuaded to forego the required 3-year reevaluation at the start of fourth grade.

My son continued to mainstream for a small portion of the school day but the classroom sizes were even larger than in 3rd grade, nearly 40 children, making it very difficult for him to manage the social challenges of having to interact with so many other children. To make matters worse, the population of students in the 4th grade BLC was noticeably different than in years past, and not in a good way. The students were *all* boys and many were very aggressive toward peers and exhibited physical violence and vulgar language in the classroom, very unlike the student population in BLC 1st-3rd grade.

Although my son liked the fourth grade BLC teacher, Mr. Vandewater, this teacher was often heard yelling at the class when i would pick my son up at the end of the day.  He continued to experience problems with repetitive speech, severe finger picking, and marked increase in complaining about "bullies." He did exhibit slightly more social awareness than before and even asked me why he was in the BLC since he recognized he did not act like the other students in the BLC.  He reported being attacked by another BLC student in Nov 2012 in 4th grade BLC and refused to board the special ed bus for a few days because the other BLC student was on the same bus.

At the same time, the fourth grade mainstream class was so overcrowded that there was nearly no possibility of effectively communicating with the fourth grade teacher about my son's ability to participate (or more likely, not participate) in her class.  She was too busy, unable to even make time for us during the October teacher conferences, and continually deferred to the Mr. Vandewater.  Mr. Vandewater, in turn, minimized the problems that my son was having.

In February 2013 there was a dramatic incident on the special ed bus in front of our house when one of the BLC students began attacking another student after my son boarded the bus, resulting in a the bus driver restraining the violent BLC student, my son cowering in the back of the bus with the student who was attacked, and me running to call the school district transportation coordinator for emergency help.  After

November 2, 2015                                      OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

nearly a half-hour standoff in front of the house help arrived. The violent BLC student was not allowed back on my son's bus for the remainder of the school year, but he continued to be in the BLC classroom. My son began to refuse to remove his coat and backpack for the entire school day, and moved his desk near the door because he felt unsafe and wanted to protect himself, his belongings, and be ready to escape the classroom at moments notice.

At the end of the year, Mr. Vandewater seemed completely spent and overwhelmed. Clearly, he, too, had a difficult year. He later conceded to me that at least 3 of the students in the fourth grade BLC should probably not have been in the class, but rather in a more restrictive setting. He did not even get my son's report card finished in time for reporting to me that year (I ended up getting a copy at the beginning of the 5th grade year).

Thus, fourth grade was a total disaster, with my son being a socially isolated misfit for half the day in a large mainstream class with an overwhelmed regular education teacher, and the "best behaved" student in a self-contained classroom of disabled peers, some with very aggressive and outwardly violent and hostile behavior and an overwhelmed BLC teacher. Against all odds my son did make some progress in reading and math during fourth grade, but still exhibited a significant achievement gap when comparing his standardized test scores to his ability in reading and math.

Against this backdrop, I felt I had no choice but to demand again a reevaluation and additional services at the beginning of fifth grade to help him make the transition to mainstream education.

## III. Fifth grade – procedural violations of IDEA

I requested and consented to an evaluation of my son at the beginning of his 5th grade school year. On September 12, 2013, the school personnel and myself agreed during the evaluation-planning meeting that my son's treating physician would provide the necessary medical statement as part of the evaluation. In addition to the evaluation consent form I was asked to sign a records release authorization form

November 2, 2015                                OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

naming my son's treating physician in case the school district needed to obtain an explanation of the medical statement.

My son's doctor (Dr. George) completed the medical statement shortly thereafter. Over the next two months I sent several written requests to the IEP team about the status of the reevaluation. Specifically, I requested that copies of any reevaluation test results or reports be sent to me and Dr. George so that *I* could review the information with Dr. George *prior* to the IEP eligibility determination meeting scheduled for Nov. 19th, 2013.

The school ignored my requests, even after I sent a written request to the special education director herself. Eventually, my son's special education case manager, Mr. Van de Water, told me that the school psychologist, Todd Nicholson, was unable to give me any evaluation test results or reports for "professional reasons" and because they had to be "verbally delivered." Upon learning this I wrote to everyone again on the IEP team, including the school psychologist, Todd Nicholson, and the autism specialist, Shelby Frantz, requesting a copy of any evaluation test results/reports so that *I* could review them with my **son's physician** prior to the upcoming IEP eligibility determination meeting. I even offered, in writing, to make ***myself*** available to the IEP team in advance of the scheduled IEP meeting so that they could "verbally deliver" the **evaluation** report to me in person. **They ignored my request.**

I went to a scheduled appointment with my son's physician and learned that the school psychologist and the autism specialist had contacted him the day before, November 13, 2013 for a teleconference about my son's evaluation. During the teleconference the school personnel (Nicholson and Frantz) informed my son's physician that they already decided that my son would not be identified as eligible for special education services under the autism spectrum category. My son's physician apparently also received some written evaluation test results/reports via fax from the school personnel, but was unable to give me a copy of what he had received since it had not yet been incorporated into my son's medical file at the time of my appointment.

Amended Request for Due Process Hearing Additional Pages
Page 6 of 19

Upon learning of the teleconference, I again wrote to the IEP team requesting a copy of any evaluation results/reports ASAP as the IEP meeting was only a few days away.  I received an explicit refusal on November 15, 2013 in an email from Joan Krug, the special education facilitator, stating that I would only be able to receive the evaluation reports at the beginning of the IEP meeting on November 19, 2013 and not before.

At the IEP meeting on November 19, 2013 I finally received a copy of the long-awaited reports and they "verbally delivered" them, apparently for the benefit of the rest of the IEP team since I am hearing impaired and had to read them while they verbally delivered them to the others at the meeting.

When I later (January 2014) requested that the school reimburse me for the $300 in charges assessed by Dr. George for the teleconferences with the school personnel on November 13 2013, the school refused.  They eventually conceded that their personnel initiated the teleconferences but refused reimbursement claiming (in their prior written notices) that their purpose in initiating the teleconferences was not to obtain an explanation of the medical statement but instead to explain the evaluation results to the physician, and was therefore not part of the reevaluation.

This was news to me as no one from the school district had ever asked for or received my permission to conduct a meeting with my son's treating physician for that purpose.  If anything, I was kept in the dark for the entire duration of the reevaluation from the time I signed the consent form on September 12, 2013 until the commencement of the IEP eligibility meeting on November 19, 2013, despite several requests in writing for copies of any test results or evaluation reports about my son's reevaluation in advance of the IEP eligibility meeting.

I filed a complaint with the Oregon Department of Education (ODE) regarding the above.  In the complaint I alleged numerous violations of FAPE for failing to reimburse me for the costs of the reevaluation, and for violation of the many procedural safeguards afforded to parents under the IDEA.

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

During the ODE complaint resolution proceeding, a state investigator,
Mr. James Varner, was assigned to perform an investigation.

Among many other misrepresentations, the School District, through its
legal specialist, Connie Bull, misrepresented Dr. George's actions, his
role in the evaluation, and his relationship vis a vis myself and my son in
her written statement of March 6, 2014 to Mr. Varner, the ODE state
investigator.

For example, even though Lenore Johansen of the Beaverton School
District, in her second prior written notice refusing reimbursement,
conceded that the school psychologist, Todd Nicholson, had initiated the
telephone call to Dr. George that led to the disputed November 13, 2013
telephone consultations with Mr. Nicholson and Ms. Frantz, Ms. Bull
baldly claimed that Dr. George initiated the calls. In fact, Dr. George was
only returning the school district's calls. He would never have called
them had Mr. Nicholson not called him first.

As another example, Ms. Bull grossly overstates Dr. George's role in my
son's education and gave the impression to the state's investigator that
the school district had carte blanche to call Dr. George for any reason.
That is not true, not is it true that the school district was authorized to
provide information about my son to Dr. George instead of to me.

Over the years, I have asked Dr. George to be a resource in prior IEP
meetings to explain things like whether my son's medication has an
effect on his cognitive ability or his repetitive speech, essentially how to
interpret my son's behavior in light of his emotional regulation deficits
and his medication. But I have _never_ asked him to act in my place or to
receive information about my son instead of me.

As another example, Ms. Bull also misrepresented the dates that Mr.
Nicholson's evaluation results and report were available. She claims, for
example, that on November 12 the school psychologist "made it a
priority to finish the draft of his evaluation report so he could send it to
Dr. George" at my request. First I find it strange that he would rush
around to complete a report for Dr. George, and yet not make that same

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

effort to complete it for me, the parent. I am far more important in my
son's life than Dr. George is. Moreover, it is simply not true that I
requested him to send the report to Dr. George in my place. Because the
school district was being quite evasive about whether any test results or
reports were even completed, I simply asked for a copy of whatever was
completed so that I could review any test results/reports with Dr.
George prior to the IEP meeting.

Moreover, elsewhere, such as in subsequent IEP reports, the date that
Mr. Nicholson's evaluation report was supposedly completed is on
November 7, 2013, not November 12, 2013. In addition, another
Beaverton school district staff, Joan Krug, the special education
facilitator outright denied that any report was completed on November
15, 2013.

Clearly, none of the Beaverton school district staff seem to have their
stories straight as to the status of the reevaluation, what was available
and when, right up until the 11th hour, before the IEP reevaluation
meeting of November 19, 2013. This is unacceptable, because I as the
parent am entitled to a copy of whatever test results and evaluations
were available as of the date of my requests. As I made numerous
requests throughout September, October, and November, the evaluation
test results should have and could have been turned over to me without
so much delay. Without this information I could not properly advocate
for my son's education.

Ms. Bull further attempted to minimize the fact that Mr. Nicholson
conceded that he did discuss Dr. George's autism diagnosis on my son's
medical statement when he called him on November 13, 2013, which
obviously falls within the scope of the reevaluation and should be
reimbursed.

Missing entirely from Ms. Bull's statement to the state's investigator is
the fact that Mr. Nicholson during that same phone call complained to
Dr. George about my request to record the upcoming IEP meeting
because of my hearing loss, claiming instead that I was trying to play a
game of "gotcha." I believe this was a thinly veiled attempt by Mr.
Nicholson to discredit me in front of Dr. George.

Amended Request for Due Process Hearing Additional Pages
Page 9 of 19

November 2, 2015                              OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District


Missing also from Ms. Bull's statement was the fact that Mr. Nicholson
admitted during the subsequent November 19, 2013 IEP meeting that
he had asked Dr. George about my son's medication status at the time of
the May 2011 psycho-educational evaluation that Mr. Nicholson relied
on to prepare his evaluation report. This, too, obviously falls within the
scope of the reevaluation and should be reimbursed.

I attempted to correct Ms. Bull's Mar. 6, 2014 misinformation letter in a
follow up letter of my own with the state investigator, Mr. James Varner,
on March 19, 2014, but he ignored my correspondence. As a result, the
complaint was not handled in accordance with the 34 CFR §300.152(4)-
(5), which sets forth the minimum State complaint procedures that a
state education agency (SEA), such as the ODE, must follow in resolving
complaints. 34 CFR §300.152 *Minimum State complaint procedures.*

For example, under subsections (4) and (5) of the minimum State
complaint procedures, the State must
>        (4) ***Review all relevant information*** and make an independent
>        determination as to whether the public agency is violating a
>        requirement of Part B of the Act or of this part; and
>        (5) Issue a written decision to the complainant that addresses
>        ***each allegation in the complaint*** and contains—
>        (i) Findings of fact and conclusions; and
>        (ii) The reasons for the SEA's final decision
The state rules are promulgated in Oregon at OAR 581-015-2030.

Under subsection (4), ODE failed to review all relevant information
when if failed to review all of my written correspondence with the
school requesting that copies of any test results/reevaluations be
provided to me in advance of the IEP meeting.

Under subsection (5) ODE failed to address each allegation in my
original complaint. Because they concluded that they only needed to
review the consent and authorization forms, and concluded that my
signature on the records release authorization form somehow justified
contacting my son's physician for purposes other than obtaining an
explanation of his medical statement, they appear to have also

Amended Request for Due Process Hearing Additional Pages
Page 10 of 19

concluded that none of the other procedural safeguards afforded to parents under the IDEA applied to my situation. None of their conclusions are supported under the IDEA or under the FERPA provisions incorporated into the IDEA. The ODE is obligated to enforce both the IDEA and all of the FERPA provisions incorporated into the IDEA.

The Final Order issued by the ODE has been reviewed by way of Petition for Judicial Review of the Final Order to the Washington County Circuit Court. My efforts to educate the state circuit court judge on the obligations of the ODE under IDEA and FERPA were rejected and the court upheld the Final Order on common law contract grounds.

During the hearing before the circuit court judge, Beaverton school district staff members, including Ms. Bull as well as Mr. Nicholson and Ms. Frantz, were present. They listened silently as the AAG mischaracterized Dr. George's role in my son's education, claiming for example, that Dr. George "represented" me, or that Dr. George initiated the phone calls to the district staff.

The case is now on appeal before the Oregon State Court of Appeals on numerous grounds, including circuit court's erroneous ruling that, as an attorney, I would be more strictly bound by my signature on the FERPA records release form than a non-attorney, and that my signature on the FERPA form overrides any protections I would have otherwise enjoyed under the IDEA as the parent of a disabled child.

I am incorporating into this Request for a Due Process Hearing my entire Petition for Judicial Review of the ODE's Final Order and selected motion papers that set out in abundant detail the facts relevant to this request and the basis for my request for a due process hearing on **_all_** of the school's and ODE's violations of the IDEA and FERPA.

## IV. Fifth grade – substantive violations

Because the school withheld *all* of the evaluation reports and test results from me entirely until the commencement of the IEP meeting on November 19, 2013, there was no time afforded to me to review any of

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

the evaluation reports in sufficient detail to point out the errors and
shortcomings of reported data and assessments to the IEP team
members. Lacking such vital information hampered my ability to
meaningfully participate in the November 19, 2013 determination that
my son was not eligible for services under the autism spectrum category
of disability.

For example, I was particularly disturbed to learn that the school
psychologist relied on the outdated 2011 psycho-educational evaluation
that my son's developmental pediatrician ordered when my son was in
2nd grade.

During the re-evaluation planning meeting of September 12, 2013, we
had agreed that the evaluation would include intelligence or personality
testing, as well as "functional communication" and "social
communication" testing in addition to the ADOS (Autism Diagnostic
Observation Schedule), ASRS (Autism Spectrum Rating Scale) and a
development profile. Instead the evaluation was a rehash of the old
2011 old psycho-educational evaluation and the only new information
was the autism evaluation.

Even more disturbing than the failure to receive the reevaluation
reports in advance of the IEP meeting of November 19, 2013, was the
fact that the two evaluators, Mr. Nicholson and Ms. Frantz, both relayed
to Dr. George during their November 13, 2013 telephone consultations
that they had already made up their mind about not finding my son
eligible under the autism spectrum disability category.

When it was revealed at the meeting on November 19, 2013, that the
reason for not finding my son eligible under the autism category was
because the autism evaluator (Ms. Frantz) rated him as ineligible under
the communication portion of the autism evaluation, I lost faith in the
accuracy of the evaluation. Although my son has excellent verbal
communication skills his other communication skills are sorely lacking.
Social communication is his biggest stumbling block, by far.

As it was already well into the school year, I decided not to contest the
evaluation but rather focus on working with the regular education

teacher and move forward with creating an IEP that would meet my
son's needs without further input from the school psychologist or the
autism specialist. Unfortunately, the IEP based on his remaining
disabilities of other health impaired (OHI) and emotional disturbance
(ED) is simply inadequate to address his needs.

Unfortunately the school district decided that since I wanted my son
mainstreamed that they were entitled to remove all behavior supports.
Their position seemed to be either he gets behavior supports in the BLC
setting, or no behavior supports in the regular education setting. There
was no attempt at providing appropriate supports to help my son
transition into the regular education setting.

In October of 2013 I complained about the school district's decision to
remove all behavioral supports. The grudgingly put them back in
temporarily, but then removed them altogether in March of 2014. I
accepted that change so that my son could attend the smaller option
school in sixth grade (which, distressingly, BLC students are not allowed
to attend). My hope was that the option school, HS2, being much
smaller and very close to my office, would provide a better environment
for learning how to be a mainstream middle schooler and allow me to
oversee his education as much as possible.

In the subsequent months, I worked diligently with the my son's
assigned fifth grade regular education teacher, Mr. Falkowski, to
address my son's needs in the regular education classroom. Essentially,
I took on the roles of special education case manager and facilitator. I
no longer communicated with the school psychologist, Mr. Nicholson,
for obvious reasons. I never heard from or communicated with the
autism specialist, Ms Frantz, ever again (except at the subsequent ODE
complaint judicial review hearing in circuit court). The special
education facilitator, Joan Krug, who once famously stated to me that
"special education is not like ordering one from Column A and one from
Column B in a Chinese restaurant" (so much for the "I" in IEP), and who
wrote the email on November 15, 2013 refusing to provide any reports
until the morning of the November 19, 2013 IEP meeting, largely
disappeared from view as well.

November 2, 2015                                              OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

Left to my own devices, I requested and began receiving the weekly reports that the regular education students received. I made the arrangements for preview visits for all of the field trips, worked on the weekly communication reports, and kept in regular communication with Mr. Falkowski and Principal Cheryl Ames.

Initially, Mr. Falkowski was very resistant to working with me because he viewed my son as Mr. Vandewater's responsibility. He also did not understand that my son needed extra direction, even with simple things, like needing to be reminded which reading group he was supposed to be in. Eventually Mr. Falkowski (I hope) appreciated my extensive efforts on my son's behalf.

Mr. Vandewater, although nominally still the special education case manager for my son's education, largely stepped aside and I worked primarily with Mr. Falkowski, and the graduate student intern, Anthony, who was invaluable in helping my son at the beginning and end of every day with organizational skills.

## V. Sixth grade – substantive and procedural violations

Although I was able to get my son somewhat successfully mainstreamed for the remainder of 5th grade, my son's education has floundered miserably since then. During 6th grade, he failed nearly all of his classes and developed serious school refusal issues, attending only one or two hours each day.

At first, things went okay. Ms. Rochelle Thomas, the new special education case manager, immediately noted that my son's IEP was lacking in social skills goals and wrote some of those in. I asked for the third time in as many years whether my son could receive pragamatic speech training, a form of social skills speech training to help children like my son converse with others rather than conduct monologs. But nothing came of it – again.

The little speech supports that my son received during his elementary school years were removed as the speech therapist decided he did not

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

qualify for speech help any longer (some of the repetitive speech had resolved during 5th grade).

After the first six weeks, my son began complaining about bullies with increasing intensity. Sadly, he began refusing to attend school. The help that Mrs. Thomas could provide was minimal – she had 30 plus other special education students to help, and there was no other special education resources offered other than Mrs. Thomas.

Incidents with the humanities teacher exacerbated the situation. For example, the humanities teacher insisted that students who forgot to bring a red pencil to class take off their shoes. This public shaming was very alarming to my son (and to me). As my son showed up to school later and later, an IEP meeting was held to change his schedule to see if that would help. It did not.

During the winter, an anonymous teacher nominated my son for AVID evaluation. He was excited about it and did all of the interviews and answered all the questions asked of him. But he did not get selected to participate in AVID due to his poor attendance, even after I pointed out to the AVID coordinator that his poor attendance was not willful but due to school refusal issues.

At one point, Mrs. Thomas decided to give my son an alarm clock. I was very upset with her and the school psychologist (Mr. Harrison) for doing so. To me it showed the depth of their failure to grasp the reasons for my son's school refusal. The disturbing part about the school district's failures is that they attributed a willfulness to my son's refusal to attend school, rather than to acknowledge his behavior deficits due to social communication problems related to his mood disorder and autism spectrum disorder. This failure can be directly attributed to the failures of the 5th grade reevaluation process.

In the spring, the special education facilitator, Lori Krumm, was called in to help. She suggested removing some of my son's learning targets – basically dumbing down the curriculum for him. I initially went along with this hoping it would reduce stress on my son, but eventually asked them to reinstate all of his learning targets. It made no sense to remove

November 2, 2015                                        OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

learning targets for a bright capable child with above-average
intelligence. What he needed in my view was more services, not fewer
targets.

I became increasingly worried about the poor trajectory that my son
was on. He was receiving failing grades in every subject despite having
normal to above-average intelligence. He was reading a lot of books, as
reading is his favorite activity and we went to the library religiously.
But he was not accessing much of the general education curriculum and
falling further and further behind.

My son's finger peeling, glove-wearing hat-wearing, coat-wearing, book-
carrying obsessions returned with a vengeance during sixth grade. My
son learned to ignore the bullies, but did so by turning inward. He made
a few friends of convenience among the other special education
students that, like him, could not bear to eat lunch in the noisy cafeteria.

I asked for information about private placements in schools that could
provide more support for a student like my son. I even visited one
private school, Bridges Middle School.

In a last ditch effort the school district offered transportation in the
form of a taxi service to the school during the last week of school (yes,
the last!). But we never used it because the problem was not with
transportation but with the school and the lack of special education
supports in the general education classrooms.

In the end my son missed about ¾ of the school year. In a final IEP
meeting with Ms. Thomas I agreed to take my son out of the smaller
option school and return him to the BLC in middle school. I expressed
concern about returning to the BLC due to the inappropriate and
aggressive peers in the BLC. Ms. Krumm assured me that by middle
school "those kids" have been weeded out of BLC and placed into more
restrictive placements.

In the final IEP dated June 12, 2015 that Ms. Krumm sent to me, she
tacked on two prior written notices at the end of the IEP. I found them
later in September when I was reviewing the IEP in preparation for

Amended Request for Due Process Hearing Additional Pages
Page 16 of 19

November 2, 2015                                    OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

filing my due process complaint. One prior written notice was to refuse
ESY, extended school year services. The other was to refuse
consideration of the private placement option because they had a
"continuum" of options within the school district. I object to the manner
in which these notices were sent. Burying them at the end of an IEP
without calling my attention to them in the sending email is
inconsiderate and does not qualify as notice.

Moreover, with regard to the so-called "continuum" of options provided
by the Beaverton school district, I find this statement to be not
believable. My son's failure in 6th grade has much to do with his lack of
experience in interacting with neuro-typical peers in a regular
education setting and the lack of appropriate services and lack of highly
qualified teachers. If he had been appropriately placed in an integrated
classroom as early as second grade with a small number of neuro-
typical peers and a highly qualified teacher with special education
training in integrating *non-disruptive* kids like my son into the regular
education classroom he would have been much better prepared for
middle school.

Instead my son has been unfairly segregated for nearly all of his school
years for no good reason other than the fact that the Beaverton School
District did NOT have a "continuum of services" to meet his needs.
While I don't necessarily want my son to attend a private school in a far
away location, if that is the only way he can get the services he needs
than that is what the school district must do.

My son is now back in a special education placement in 7th grade in our
local neighborhood middle school. Much needed special education
transportation services were reinstated. But, distressingly, during
September he was assaulted by another BLC peer, another 7th grade
boy. The assault was not provoked, and the assistant principal, Tina
Meyer provided me with an information letter about the assault and
asked if I wanted to press charges against the other student (I decided
against doing so). My son had a large bruise on the back of his head and
red marks on his face, but was fortunately not seriously hurt, and was
able to go back to school the next day. The other student is apparently

Amended Request for Due Process Hearing Additional Pages
**Page 17** of 19

November 2, 2015                                          OAH Case No. DP 15-114
Donna Jo Coningsby, parent of minor child in the Beaverton School District

not returning to my son's school, so I guess he has now been "weeded out."

In a silver lining to an otherwise truly dreadful couple of years at the Beaverton School District, the new special education case manager for my son, Mr. Steven Smilove, does seem to have a better understanding of what my son's special education needs are, and is beginning to have some success in helping my son return to the regular education curriculum. Whether it will last beyond these first couple of months of school is anyone's guess.

With the 7th grade IEP team I am attempting to address my son's needs to ensure that the Beaverton school district provides him with a FAPE in the least restricted environment as required by the IDEA. A new reevaluation plan is under way and the results of that reevaluation have been promised to me well in advance of the next IEP meeting in mid December. But it remains to be seen if the promise is kept and whether it will be enough.

<u>Amended Request for Due Process Hearing Item (5) Proposed Solution</u>

I am leaving my proposed solution with regard to the ODE intact for purposes of appeal of Judge Mann's jurisdictional decision as follows:

(1)    Order the ODE to withdraw the defective Final Order in this case and reimburse me for all of the court fees and costs assessed in the Washington County Circuit Court and Court of Appeals for the review of the defective Final Order.

The amended proposed solution with regard to the Beaverton school district is as follows:

(2)    Order the Beaverton School District to reimburse me for the $300 assessed by my son's physician for the teleconferences with their personnel on November 13, 2013.

(3)    In lieu of the proposed solution with regard to the ODE and ALJ Mann's position that the OAH does not have jurisdiction over

the ODE, order the Beaverton School District to issue a
corrective letter to the ODE withdrawing the school district's
misrepresentations with regard to the school staff's role in the
procedural violations that occurred in the reevaluation in fifth
grade, which violations contributed to the denial of a free and
appropriate public education for my son.

(4)    Order the Beaverton School District to conduct a
comprehensive evaluation of my son's learning disabilities so
that together the school and myself can reach a proper
agreement on the identification and eligibility of my son for
special education services, and to develop a suitable IEP that
will address _all_ of his educational needs adequately and in
accordance with the IDEA.

(5)    Order the Beaverton School District to provide a compensatory
education remedy in equal measure to the amount of hours of
education lost in sixth grade due to the aforementioned
inadequate reevaluation, inadequate IEP, and the resulting
denial of a free and appropriate public education for my son.

(6)    Award myself and my son damages in a sum that compensates
our family for any losses not compensable through the
provision of education and related services, in an amount to be
determined during the due process hearing.



Oregon Department of Education

John A. Kitzhaber, MD, Governor

**Office of the Deputy Superintendent**
255 Capitol St NE
Salem, OR 97310
Voice: 503-947-5600
Fax: 503-378-5156

April 9, 2014

Donna Jo Coningsby

████████████████

Jeff Rose
Superintendent
16550 SW Merlo Road
Beaverton OR 97006-5152

RE:  Beaverton School District – Case # 14-054-007

Dear Ms. Coningsby and Mr. Rose:

Enclosed please find the Department's Findings of Fact, Conclusions and Final Order in
Complaint No. 14-054-007 regarding ████████ Coningsby, a student with disabilities in the
Beaverton School District.

If you have any questions regarding the order, please contact me.

Sincerely,

Claudette Rushing
Legal Specialist
Office of Learning/Student Services
(503) 947-5689
Claudette.Rushing@state.or.us

CR/jb

Enclosures
cc:  Sarah Drinkwater, Ph.D., Assistant Superintendent
     Danielle Sheldrake, Special Education Director
     File

Exhibit 3 Page 1

**BEFORE THE STATE SUPERINTENDENT OF PUBLIC INSTRUCTION**

| | | |
|---|---|---|
| In the Matter of | ) | FINDINGS OF FACT, |
| Beaverton School District 48J | ) | CONCLUSIONS, |
| | ) | AND FINAL ORDER |
| | ) | Case No. 14-054-007 |

## I. BACKGROUND

On February 11, 2014, the Oregon Department of Education (Department) received a letter of complaint from the parent (Parent) of a student (Student) residing and attending school in the Beaverton School District (District). The complaint requested a special education investigation under OAR 581-015-2030. The Department provided a copy of the complaint letter to the District.

Under federal and state law, the Department must investigate written complaints that allege violations of the Individuals with Disabilities Education Act (IDEA) and issue a final order within 60 days of receiving the complaint unless exceptional circumstances require an extension.[1] On February 20, 2014, the Department sent a *Request for Response* to the District identifying the specific IDEA allegations in the complaint to be investigated. On March 6, 2014, the District submitted its *Response* to the *Request for Response*, with accompanying documentation (69 documents totaling 218 pages). On March 19, 2014, the Parent submitted a written *Reply* via email in this case. This order is timely.

The Department's contract complaint investigator (complaint investigator) determined that an onsite investigation would be necessary. On March 21, 2014, the complaint investigator separately interviewed the Parent and District staff, including a School Psychologist and an Autism Consultant, with the District's legal counsel present during interviews of District staff. On March 28, 2014, the complaint investigator interviewed by telephone the Student's medical doctor. The complaint investigator reviewed and considered all of the interviews and documents in reaching the findings of fact and conclusions of law contained in this order.

## II. ALLEGATIONS AND CONCLUSIONS

The Department has jurisdiction to resolve this complaint under OAR 581-015-2030 and 34 CFR §§ 300.151-153.The Parent's allegations and the Department's conclusions are set out in the chart below. The Department based its conclusions on the Findings of Fact in Section III and the Discussion in Section IV. This complaint covers the one year period from February 12, 2013, to the filing of this complaint on February 11, 2014.[2]

| No. | Allegations | Conclusions |
|---|---|---|
| 1. | **Evaluation and Reevaluation Requirements; Consent**<br><br>The complaint alleges the District violated the IDEA by exceeding the | **Not Substantiated**<br><br>The Department concludes that the exchange of information that occurred in this case is |

---

[1] OAR 581-015-2030; 34 CFR §§ 300.151-153
[2] OAR 581-015-2030(5)

Exhibit 3 Page 2

EXHIBIT 3, Page 2 of 10
Case No. 3:16-cv-00627-HZ

| | |
|---|---|
| scope of the written consent signed by the Parent for reevaluation of the Student and by exceeding the scope of the reevaluation process, by consulting with the Student's treating physician in addition to obtaining a medical statement from the treating physician.<br><br>Relevant Law: OAR 581-015-2105; OAR 581-015-2110, OAR 581-015-2115 and 34 CFR 300.301 and 34 CFR 300.303; OAR 581-015-2090 and 34 CFR 300.9, 300.154, 300.300 & 300.622. | clearly within the scope of the consent provided by the Parent. The Department does not sustain the allegation that the District must reimburse the Parent for the amount billed by the Student's medical doctor based upon an allegation that the District exceeded the scope of the consent in this case or failed to provide free reevaluation of the Student. |
| **Proposed Corrective Action**<br><br>The Parent requests the following corrective action: reimburse the Parent for the cost of the District's consultation with the Student's treating physician. | No Corrective Action is ordered in this case. |

### III. FINDINGS OF FACT

**Background**

1. The Student in this case is presently 10 years old, and is in fifth grade. The Student is eligible for special education under the categories of Emotional Disturbance, Other Health Impairment and Communication Disorder.

**Evaluation and Reevaluation Requirements; Consent**

2. On September 12, 2013, the Student's IEP team met at the Parent's request to determine if additional assessments were needed. The IEP team agreed to evaluate the Student for Autism Spectrum Disorder (ASD), and on September 12, 2013 the Parent signed a form entitled "Prior Notice about Evaluation/Consent for Evaluation" to consent to the evaluation, which lists the following assessments: "Functional Communication, Social Communication, Test of Problem Solving, Medical Evaluation, one illegible item, Autism Diagnostic Observations Schedule, Developmental Profile, and an Autism Spectrum rating scale." The Parent also signed on September 12, 2013 an "Authorization to Use and/or Disclose Educational and Protected Health Information" form which authorized the use and disclosure to the District by the Student's medical doctor (a Psychiatrist) of the "Physician's Eligibility Statement," "Educational Information" and "Psychological evaluations," along with "Mental health related information requested." The District then began the assessments required to determine whether the Student's disability includes ASD.

3. The Parent states the Student's medical doctor has been the Student's treating doctor since 2009. The Student's medical doctor completed a Medical Statement on September 17, 2013 and provided it to the District's School Psychologist. This Medical Statement included, *inter alia*, a diagnosis of "Asperger's Disorder," and the School Psychologist observed that this was a new diagnosis for the Student and on or about October 31, 2013, called the Student's medical doctor intending to discuss this new diagnosis and left a message requesting the Student's medical

14-054-007                               2

Exhibit 3 Page 3

EXHIBIT 3, Page 3 of 10
Case No. 3:16-cv-00627-HZ

doctor return the call. The School Psychologist was interested in knowing if there were additional assessments concerning the "Asperger" diagnosis listed on the Medical Statement, to avoid duplication of assessments.

4. On or about November 12, 2013, the Parent requested a telephone call from the School Psychologist, and then the Parent requested that the School Psychologist share the evaluation information with the Student's medical doctor before the Parent's appointment with the medical doctor the next day. On or about November 12, 2013, the Student's medical doctor returned the School Psychologist's phone call. By that time, the School Psychologist had completed the relatively small assigned portion of the overall assessment concerning the Student's potential ASD, which included a records review and a review of observational checklists from the Parent and teacher. The School Psychologist reports that the Student's medical doctor said that the Student is a "complex kid" when the School Psychologist noted the new Asperger diagnosis, but no additional assessments were identified by the Student's medical doctor. The Student's medical doctor then made inquiries of the School Psychologist, including whether the District had completed a cognitive assessment of the Student and the School Psychologist informed the medical doctor of a cognitive assessment by a third party which concluded the Student is in "high-average to superior" cognitively. The medical doctor also asked the School Psychologist about the School Psychologist's findings, which were limited to a Psychoeducational Evaluation based on behavior checklist reports. Although the School Psychologist's component of the assessment related to ASD showed some elevated scores, this is only one part of the overall ASD assessment. The Student's medical doctor also had questions about a particular assessment, the Autism Diagnostic Observation Schedule (ADOS) but the School Psychologist had not administered that assessment to the Student. At the Student's medical doctor's request, the School Psychologist sent an email to the District's Autism Consultant requesting contact with the Student's medical doctor concerning the ADOS. The School Psychologist also reported that the Student's medical doctor called the School Psychologist because the medical doctor needed to gather information before an upcoming appointment with the Parent. The School Psychologist is not sure how long the conversation with the Student's medical doctor took but believes it was around 20 minutes.

5. The District's Autism Consultant reports calling the Student's medical doctor on November 13, 2013, at the request of the Student's medical doctor, as relayed by the School Psychologist, and sharing the ADOS assessment results with the Student's medical doctor by telephone. The Autism Consultant also emailed a copy of the relevant portions of the report to the medical doctor after-hours that evening. The Autism Consultant also reports that the Student's medical doctor shared information concerning the Student and the Student's family, but this was not information that was requested by the Autism Consultant. The Autism Consultant also reports that the Student's medical doctor had questions concerning the Student's educational eligibility under ASD, and the Autism Specialist explained that the results to date were "non-spectrum scores." The Autism Specialist did tell the Student's medical doctor that the Student was at times non-compliant, refusing to answer some questions, but the report indicates that the Student was "rather negative and non-compliant, but conversation did occur." The Autism Consultant's second, and last, observation of the Student as part of the assessment occurred on November 15, 2013, after the conversation with the Student's medical doctor, but before the IEP meeting on November 19, 2013.

6. The Student's medical doctor reports that conversation with the School Psychologist by telephone, on or about November 12, 2013, lasted about one hour; and that the conversation with the District's Autism Consultant lasted about 30 minutes; and that District staff had not previously contacted the medical doctor concerning the Student during the ASD evaluation process. The Student's medical doctor and, reportedly, the Parent, believed District staff needed input from the Student's medical doctor and should have called in the first instance. The Student's medical

14-054-007                                    3

Exhibit 3 Page 4

EXHIBIT 3, Page 4 of 10
Case No. 3:16-cv-00627-HZ

doctor reports that he called District staff to give them a better perspective of the Student's psychological disorders and believes that goal was accomplished. The Student's medical doctor billed the Parent for the time spent on the telephone with District staff, but reported advising the Parent that the Parent should not seek reimbursement from the District. The medical doctor did not notify District staff they would be billed for the conversations concerning the Student prior to or during the conversations. The medical doctor reports that any incurred bills for a student go to the Parents in these circumstances and that the Student's medical doctor has never billed school districts for these consultations. The medical doctor believes that all parties benefitted from the conversations concerning the Student and expressed hope that District staff learned more about the Student's psychological status.

7. During interview of the Parent by the complaint investigator, the Parent reports understanding that District staff would talk to the Student's medical doctor as part of the consent to obtaining a Medical Statement so that District staff could do their report, but that the Parent did not give permission to explain the report to the Student's medical doctor, so that the Student's medical doctor could explain their report to the Parent. The Parent further stated in the interview that the District did not explain it would be verbally explaining their report to the Student's medical doctor and the Parent stated that a copy of the written reports would have been fine. However, there is no written evidence in the record to indicate the District was on notice of this. The Parent further stated Parent just wanted a copy of a written report so the Parent could talk to the Student's medical doctor about the reports before the IEP meeting and that Parent did not want the District to explain the reports to the doctor. Again, it is not clear that this information was relayed to the District based on the documents in the record. The Parent further explained that the Parent wanted a final report but instead District staff provided only portions of the report and want the Parent to pay the bill. Finally, the Parent believes that the District should have declined to answer any questions asked by the Student's medical doctor.

8. On January 22, 2014 and again on January 31, 2014, the District issued Prior Written Notices (PWN)s refusing the Parent's email request for reimbursement for the Student's medical doctor's invoice to the Parent for the time spent during the medical doctor's telephone conversations with the School Psychologist and Autism Consultant.

## IV. DISCUSSION

### 1. Evaluation and Reevaluation Requirements; Consent

As related to the IDEA allegation above, at particular issue in this case, is a fee charged to the Parent by the medical doctor for phone conversations with school staff that were related to the Student and associated clarifications by the Student's medical doctor regarding certain assessments conducted by various school personnel during the school's autism evaluation process. The IDEA allegations at issue for the purpose of this investigation apply to the evaluation of the Student for an autism eligibility and the Parent's related consent. The complaint alleges the District violated the IDEA by exceeding the scope of the written parental consent signed by the Parent for the reevaluation of the Student and by exceeding the scope of the reevaluation process by consulting with the Student's treating physician in addition to obtaining a medical statement from the treating physician. The Parent's *Reply* in this case states that the Parent's "allegations are that by refusing to reimburse me for the [Student's medical doctor's] fees, the school district has violated their obligation under the IDEA to provide a re-evaluation at public expense and without charge to the parent under the definition of Free and Appropriate Public Education (FAPE) in the IDEA 2004 law." [emphases in original]

Exhibit 3 Page 5

EXHIBIT 3, Page 5 of 10
Case No. 3:16-cv-00627-HZ

In a February 25, 2014, letter to the Department's complaint investigator, the Parent also stated that "a more accurate statement of my allegation is that, by consulting with [the Student's medical doctor] *for reasons other than obtaining an explanation of the medical statement*, the school district violated the IDEA by exceeding the scope of my written consent." Concerning the allegation in the Department's *Request for Response* concerning "exceeding the scope of the reevaluation process," the Parent's letter of February 25, 2014 states:

> [I]t is my understanding that the school district is obligated to provide a reevaluation that is "sufficiently comprehensive to identify all of the child's special education and related services needs, whether or not commonly linked to the disability category in which the child has been classified." OAR 581-015-2110(4)(e). With that in mind, a consultation with [the Student's medical doctor] by the school district personnel would, in my view, be within the scope of the reevaluation process as long as it was confined to obtaining an explanation of the medical statement *as it relates to the identification of all of* [the Student's] *special education and related services needs.* In fact, it would seem to me that such a consultation with [the Student's] treating physician would help the school district meet its obligation to provide a reevaluation that is "sufficiently comprehensive" as required under OAR 581-015-2110(4)(e). [emphases in original]

The essence of the complaint in this case is thus whether the District must reimburse the Parent for time billed to the Parent by the Student's medical doctor for two phone conversations which were initiated by the medical doctor after the District's IDEA reevaluation process, based upon the Parent's theory that the District exceeded the scope of the Parent's written consent for the particular reevaluation of the Student. To determine this question, the Department must first examine the IDEA's reevaluation process and its rules and then look at the relevant consent requirements.

OAR 581-015-2100(1) provides that school districts are responsible for evaluating children and determining their eligibility for special education services. OAR 581-015-2105(4) provides that school districts must ensure that a reevaluation of a child with a disability is conducted in accordance with OAR 581-015-2115, subject to OAR 581-015-2110(2) (involving consent). OAR 581-015-2110(3)(a) requires school districts to "Use a variety of assessment tools and strategies to gather functional, developmental, and academic information about the child, *including information provided by the parent* that may assist in determining" the content of the child's IEP. [emphasis supplied]. The "sufficiently comprehensive" language that Parent noted is "… required under OAR 581-015-2110(4)(e)" actually relates to all of the assessments and evaluation materials for a student, which must identify all of the child's special education and related service needs, whether or not commonly linked to the disability category in which the child is classified. Nothing in this rule or its language requires that non-District initiated follow up explanatory phone conversations with a parentally selected medical doctor are required components of a "sufficiently comprehensive" evaluation for IDEA purposes. Nor is there any indication in the record that the District was unable to determine what special education or related services the Student needed without these extraneous conversations with the medical doctor. Indeed, the only requirement for a physician or medical doctor expressly listed in the IDEA evaluation process is for the doctor to complete the medical assessment as necessary for various disability eligibility types.[3] School District staff will then review and use this medical assessment, in addition to a variety of other required assessments and materials, to complete the IDEA evaluation process. Additionally, OAR 581-015-2110(2)((a) and (b) provide that before conducting a reevaluation, school districts must

---

[3] See OAR 581-015-2000 and OAR 581-015-2130(1)(d)

Exhibit 3 Page 6

EXHIBIT 3, Page 6 of 10
Case No. 3:16-cv-00627-HZ

provide notice to the parent that describes any evaluation procedures the school district proposes to conduct as a result of the evaluation planning process and must obtain informed written consent in accordance with OAR 581-015-2090 and 581-015-2095.

OAR 531-015-2090(5) states that a school district must obtain informed parent consent before conducting any reevaluation of a child with a disability. OAR 581-015-2090(1)(a) and (b) provide that consent means that the parent has been fully informed of all information relevant to the activity for which consent is sought and understands and agrees in writing to the carrying out of the activity for which consent is sought.

Thus, the inquiry of whether the District exceeded the scope of the notice provided to the Parent or the scope of the Parent's written consent in this case necessarily begins with a review of the notice that was provided by the District to the Parent before this evaluation occurred, and the related written consent form that was signed by the Parent. The notice and consent in this case are contained in a single document, entitled "Prior Notice about Evaluation/Consent for Evaluation" signed by the Parent on September 12, 2013. This notice and consent lists the following assessments which were consented to in writing by the Parent: "Functional Communication, Social Communication, Test of Problem Solving, Medical Evaluation [unreadable], Autism Diagnostic Observations Schedule, Developmental Profile, Autism Spectrum rating scale." The Parent also signed, on September 12, 2013, an "Authorization to Use and/or Disclose Educational and Protected Health Information" which authorized the use and disclosure to the District by the Student's medical doctor the "Physician's Eligibility Statement," "Educational Information" and "Psychological evaluations", along with "Mental health related information requested."

It is in this context that the Department must determine whether the Parent's allegation that the District's provision of information to the Student's medical doctor verbally, as opposed to a written report, is beyond the scope of the Parent's consent; and whether explaining the reports made by two District staff members to the Student's medical doctor is beyond the scope of the Parent's consent on this form. The Department concludes that the exchange of information that occurred in this case is clearly within the scope of the consent provided by the Parent. The logic of the distinction made by the Parent in this case simply escapes the Department. The caption of the form entitled "Authorization to Use and/or Disclose Educational and Protected Health Information" clearly envisions an exchange of information between the parties listed on the form, in this case the District, on the one hand, and the Student's medical doctor, on the other hand. Additionally the authorization begins. "I authorize the following provider(s) to use and/or disclose educational and/or protected health information regarding my child." Again, this clearly envisions an *exchange* of information between the District and the Student's medical doctor, of both educational and protected health information. Presumably, educational information would originate with District staff. Additionally, the Student's medical doctor called the District and provided information to the District during the call in question, but primarily received information from the District at this time, in order to assist the Student's medical doctor in preparing for an appointment with the Parent the day after the phone calls to the District, presumably to assist the Parent in being sufficiently informed by the Student's private medical provider and to allow for meaningful participation at the IEP meeting on November 19, 2013. This was per the Parent's request of the District. Parent has stated that Parent believes when asked questions by the Student's medical doctor by telephone that District staff had to decline to provide an answer to the Student's medical doctor, to stay within the scope of the Parent's written consent; however, there is nothing on the consent form or the Authorization to Use and/or Disclose Educational and Protected Health Information form to this effect. Neither the Student's medical doctor nor the Parent ever notified the District that it would be billed by the Parent or Doctor for providing information verbally to the Student's medical doctor concerning the District staff's assessments. Nor is there evidence that District was informed of an option of providing this information in writing to the parties in lieu of the phone

14-054-007                                    6

Exhibit 3 Page 7

EXHIBIT 3, Page 7 of 10
Case No. 3:16-cv-00627-HZ

calls. Further, the Student's medical doctor billed the Parent for these calls, and the medical doctor reported during interviews with the Department that the Parent was told not to seek reimbursement from the District for these conversations by the medical doctor. Finally, nothing in the consent form or in the applicable regulations requires this rigid view of the Parent's written consent as related to medical billing in this case. There is nothing in the regulations that would require a school district to be billed for good faith conversations with medical doctors after obtaining an Authorization to Use and/or Disclose Educational and Protected Health Information form from a parent. Nor is there any guidance on point that would indicate that after a reevaluation consent form is signed by a parent that every subsequent medical expense associated with a student may be billed to a district without the district's knowledge or consent. Indeed, this would create a slippery slope for school districts and policy wise would prohibit conversations and collaboration which would ultimately benefit a student.

The signed IDEA Consent for Evaluation/ Reevaluation form is not to be confused with medical billing authorization nor is it a directive to doctors' regarding their billing practices. While the IDEA does require a Free Appropriate Public Education (FAPE) and evaluations at no-cost to parents, there is no provision for extra medical billing matters. These conversations were clearly initiated by the doctor for the benefit of the doctor and the Parent, not the school district. It is inconsequential if the District benefited in any way from these conversations made at the behest of the Student's physician. Indeed, the District had completed most of its reevaluation requirements *before* the doctor even returned the District's phone calls, and as noted above the District was never aware the doctor was billing them for the conversations. As such, the District was not the party who requested or expressly benefited from the dialogue and these discussions were not part of the regulatory reevaluation requirements that are necessary under the IDEA.

Finally, it is important to note that while the IDEA makes reference to a FAPE and lists several no-cost provisions for parents, there is nothing in the IDEA that would prohibit a school district from charging reasonable fees to students with disabilities, or their parents, if the fees are charged to the same extent to children who do not have disabilities.[4] Therefore, there is indeed a clear basis for *parents* to pay reasonable fees for their children in the IDEA.

As the fees for these conversations were not related to the doctor's necessary role in the specific IDEA evaluation process which was initiated by the District and the conversations were conducted at the behest of the doctor *after* the completion of the medical evaluation form, it is not unreasonable for the Parent to pay these fees or likewise dispute them with the doctor's office as opposed to the District. Likewise, the doctor may want to reexamine these charges to determine if they were even within the scope of the Parent's requested services and payment authorization. However, these medical billing matters are outside the scope of the IDEA and thus cannot be addressed in this investigation.[5]

The Department therefore does not sustain the allegation that the District must reimburse the Parent for the amount billed by the Student's medical doctor based upon an allegation that the District exceeded the scope of the consent in this case or failed to provide free reevaluation of the Student.

---

[4] 34 CFR 300.39(b)(10
[5] See OAR 581-015-2030

14-054-007                        7

Exhibit 3 Page 8

EXHIBIT 3, Page 8 of 10
Case No. 3:16-cv-00627-HZ

**CORRECTIVE ACTION[6]**
*In the Matter of Beaverton School District*
Case No. 14-054-007

The Department does not order Corrective Action resulting from this investigation.


Dated this 9th Day of April, 2014


Sarah Drinkwater, Ph.D.
Assistant Superintendent
Office of Learning/Student Services


Mailing Date: April 9, 2014

---

[6] The Department's order shall include any necessary corrective action as well as documentation to ensure that the corrective action has been completed (OAR 581-015-2030(13)). The Department expects and requires the timely completion of corrective action and will verify that the corrective action has been completed as specified in any final order (OAR 581-015-2030(15)). The Department may initiate remedies against a party who refuses to voluntarily comply with a plan of correction (OAR 581-015-2030(17) & (18)).

14-054-007                              8

Exhibit 3 Page 9

EXHIBIT 3, Page 9 of 10
Case No. 3:16-cv-00627-HZ

CERTIFICATE OF SERVICE

I hereby certify that the foregoing FINDINGS OF FACT, CONCLUSIONS AND FINAL ORDER for Case # 14-054-007 has been served on April 9, 2014 by then placing in a United States Post Office, at Salem, Oregon, by certified mail, return receipt requested, a true and correct copy thereof addressed to each of the following and prepaying postage thereon:

Donna Jo Coningsby

██████████████████

Jeff Rose, Superintendent
Beaverton SD
16550 SW Merlo Road
Beaverton OR 97006-5152

Jan Burgoyne
Legal Assistant
Office of Learning/Student Services
(503) 947-5784

Exhibit 3 Page 10

EXHIBIT 3, Page 10 of 10
Case No. 3:16-cv-00627-HZ

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF WASHINGTON

| | |
|---|---|
| Donna Jo Coningsby, | Case No.: C 14449 2CV |
| Petitioner, | PETITION FOR JUDICIAL REVIEW PURSUANT TO ORS 183.484 |
| vs. | |
| State Superintendent of Public Instruction, an Office of the Oregon Department of Education, | |
| Respondent | |

Petitioner Donna Jo Coningsby appearing pro se, petitions for judicial review of a final

order in other than a contested case under ORS 183.484, and alleges as follows:

PARTIES

1.

Petitioner is the parent of a child ("Student") enrolled in fifth grade in the Beaverton

School District ("District") in school year 2013-2014, and receiving special education services

under an Individualized Education Plan ("IEP") developed in accordance with the Individuals

with Disabilities in Education Act ("IDEA") 20 U.S.C. § 1400, *et. seq.*

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 1

2.

Respondent is the State Superintendent of Public Instruction, the office of the Oregon Department of Education that oversees the state's policies and procedures for implementing IDEA in accordance with federal and state law.

JURISDICTION

3.

This Court has jurisdiction to address this petition pursuant to ORS 183.484.

ORDER

4.

The Respondent's letter dated June 3, 2014, and mailed on June 5, 2014, (Exhibit 1) denying a Petition for Reconsideration (Exhibit 2) of Final Order 14-054-007 (Exhibit 3) is a Final Order in other than a Contested Case reviewable under ORS 183.484 because it constitutes "agency action expressed in writing . . ." not arising from any of the four categories described in ORS 183.310(2)(a).

GENERAL ALLEGATIONS - COMPLAINT

5.

(a) In the summer prior to fifth grade, Petition requested a re-evaluation the Student's placement in the District's Behavior Learning Class (BLC). Student had been placed in the BLC in first grade after having been determined as eligible for special education services under the Other Health Impairment (OHI) and Emotionally Disturbed (ED) categories due to behavioral

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 2

1   challenges with hyperactivity and mood disorders.  In fourth grade, Student attempted

2   mainstreaming in the regular classroom for one-half day, but the effort was hampered by the

3   large class sizes (40 students) and the BLC was no longer appropriate since the Student no longer

4   needed to be in a self-contained classroom.

5

6          (b) On September 12, 2013, at the end of the Student's IEP Evaluation Planning meeting,

7   District personnel asked the Petitioner to sign a form entitled "Prior Notice about

8   Evaluation/Consent for Evaluation" (the Consent Form) giving her consent to the District to re-

9   evaluate the Student for special education services under IDEA As documented in the Consent

10  Form, the IEP team (consisting of the Petitioner and District personnel) agreed that a re-

11  evaluation was warranted based on several factors, including the medical diagnoses provided by

12  the Student's family physician.  The Consent Form further documented the evaluation

13  procedures, assessments and/or tests that were planned to be used, which included, among

14

15  others, a medical evaluation and various autism and communication skills evaluations (Exhibit 2,

16  Page 23).

17

18         (c) On the same date, September 12, 2013, at the end of the same meeting, District

19  personnel asked the Petitioner to sign an additional form entitled "Authorization to Use and/or

20  Disclose Educational and Protected Health Information" (the Authorization Form).  District

21  personnel explained to the Petitioner that her signature on the Authorization Form was needed so

22  that District personnel could contact the Student's family physician about the medical diagnoses

23  and medical evaluation referenced in the Consent Form. (Exhibit 2, Page 24)

24

25         (d) On September 17, 2013, at a District personnel's request, the Student's family

26  physician completed and signed a Medical Statement as part of the medical evaluation

27  referenced in the Consent Form.

28

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 3

(e) On September 26, 2013, Petitioner sent the school psychologist and the autism specialist (District personnel) an email stating, among other things, that she let the Student's family physician know that they may be contacting him, and requesting that the District personnel "provide copies of any reports you generate about the evaluation" to the Student's family physician. (Exhibit 2, Page 27)

(f) On October 28, 2013, October 29, 2013 and November 12, 2013 Petition sent three follow up emails to various District personnel, including the special education facilitator and BLC teacher, requesting a copy of the written evaluation report prior to the scheduled IEP meeting on November 19, 2013, so that Petition could review the report with the Student's family physician in advance of that meeting.

(d) On November 14, 2013, the Petitioner had not yet received the copy of the written evaluation report, but went ahead with a planned meeting with the Student's family physician. Petitioner learned from the Student's family physician that he had been contacted by the school psychologist, and had returned his call on Friday, November 8, 2013, and subsequently consulted by telephone on November 13, 2013 with both the school psychologist and with the autism specialist.

(e) On November 15, 2013 a District personnel, the special education coordinator, sent a reply email to Petitioner indicating that the evaluation reports were still being prepared and that Petitioner would not receive copies of the reports until the day of the scheduled IEP meeting, November 19, 2013.

(f) On November 19, 2013, the IEP meeting was held as scheduled, and the Student's Individualized Education Plan was modified to add support for the Student's inclusion into the mainstream classroom for the full day.

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 4

(g) On January 17, 2014, Petitioner sent an email to the District's special education coordinator requesting reimbursement for the bill she received from the Student's family physician for charges incurred for the telephone consultations with District personnel on November 13, 2013.

(h) On January 22, 2014, the District issued an action denying Petitioner's request for reimbursement. Among other reasons, the District alleged that "the conversations were initiated so that [the Student's physician] could better understand the reports written by staff," and "to share assessment information … at your request." (Exhibit 2, Page 25).

(i) On January 25, 2014, Petitioner sent an email to the District providing ample written evidence that Petitioner only requested copies of the written re-evaluation reports for herself and the Student's physician so that Petitioner could review the written re-evaluation reports with the Student's family physician in advance of the scheduled IEP meeting on November 19, 2013. (Exhibit 2 Page 37)

(j) On January 31, 2014, the District issued a revised action denying Petitioner's request for reimbursement. Among other reasons, the District complained that "they were not notified in advance that there would be a charge for conversing with" the Student's physician, and that "almost all of the conversations consisted of" answering the Student's physician's questions about the evaluation. The District also admitted that "District staff initially called" the Student's physician "to obtain an explanation of the Medical Statement," but that by the time the Student's physician called back "District staff no longer needed the explanation." (Exhibit 2, Page 40)

(k) On February 11, 2014, Petitioner filed a Complaint (Exhibit 4, Page 1) with the Respondent about the District's refusal to reimburse the Petitioner for the cost of consultations

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 5

1  between the District personnel and the Student's family physician on November 13, 2013. In the

2  Complaint the Petitioner requested reimbursement because:

3
      i.  the re-evaluation of a student is part of the special education and related
4
5            services that are to be provided at public expense and without charge to

6            the family under the definition of a Free and Appropriate Public Education

7            (FAPE) in the IDEA law;

8
      ii.  the re-evaluation is the responsibility of the District under the federal and
9
10            state regulations implementing IDEA;  OAR 581-015-2100;

11        iii.  the District must provide a copy of the written re-evaluation report to the

12            parent at no cost.  OAR 581-015-2120(6); and

13
      iv.  Petitioner did not consent to District personnel consulting with the
14
15            Student's family physician for the purpose of explaining the staff reports
16            to him as alleged by the District in their actions of January 22 and January

17            31 denying reimbursement.  Petitioner was not fully informed of all

18            information relevant to the activity for which her consent is alleged, and
19
20            did not understand or agree in writing to the carrying out the activity for

21            which her consent is alleged, both of which are in violation of OAR 581-
22            015-2090, the regulation implementing the consent provisions of the

23            IDEA law.

24          **GENERAL ALLEGATIONS – COMPLAINT INVESTIGATION**

25                    7.
26
27      (a) In correspondence dated February 20, 2014, the Respondent, through a contract

28  investigator (Investigator) sent to Petitioner a Request for Response that characterized the

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 6

1  Petitioner's Complaint as alleging that the District (1) exceeded the scope of the written consent

2  signed by the parent for reevaluation of the student, and 2) exceeded the scope of the

3
   reevaluation process.  While allegation (1) is generally consistent with Petitioner's Complaint,
4
5  allegation (2) does not capture the full extent of the allegations.  Missing entirely from the

6  Investigator's RFR was any mention of the allegations with reference to the obligation of the

7  District to provide the re-evaluation at no cost to the parent under the definition of FAPE in the

8  IDEA law, including a copy of the written evaluation report. (See, paragraph 6(k) of this Petition
9
   for Review, above).
10
11      (b) On February 25, 2014, Petitioner sent a letter to the Investigator, copying the

12  Respondent and District, commenting on the inaccurate characterization of the allegations in

13  Petitioner's Complaint and requesting correction.  Sometime later, the Petitioner met with the

14
    Investigator at her office to answer his questions.
15
16      (c)  Petitioner received a copy of a letter dated March 6, 2014 from the District

17  responding to the Investigator's RFR.  The District's correspondence referenced an attachment

18  sent separately to both the Petitioner and the Investigator, of a large set of documents from the

19  Student's education record.  The documents included copies of email correspondence between
20
    the Petitioner and various District personnel.
21
22      (d) On March 19, 2014, the Petitioner sent an email to the Investigator and the District

23  providing comments on the District's March 6th response to the Investigator.  The Petitioner's

24  comments pointed out the inaccuracies in the characterization of Petitioner's allegations, as well

25
    as the many discrepancies and omissions in the District's selection of what they describe as
26
27  "relevant facts."

28

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 7

1    (e) On April 9, 2014 the Respondent mailed to Petitioner a letter and document entitled

2    Findings of Fact, Conclusions and Final Order 14-054-007.  The documents were postmarked

3    April 10, 2014 and Petitioner received them on April 11, 2014.  (Exhibit 1).

4

5    (f) On May 8, 2014 the Petition mailed a Petition for Reconsideration and Entry of New

6    Order in Case No. 14-054-007. (Exhibit 2).

7    (g) On June 5, 2014 the Respondent mailed to Petitioner the letter dated June 3, 2014,

8    denying her Petition for Reconsideration and Entry of New Order in Case No. 14-054-007.

9    (Exhibit 1).  The letter was postmarked June 5, 2014, and Petitioner received them on June 6,

10   2014.

11

12   (h) On August 4, 2014, Petitioner filed this Petition for Judicial Review Pursuant to ORS

13   183.484.

14

15

16   **PETITION FOR JUDICIAL REVIEW PURSUANT TO ORS 180.484**

17   8.

18   The Respondent's Final Order in Case No. 14-054-007 and subsequent letter denying

19   Petitioner's Petition for Reconsideration  is a final determination adversely affecting Petitioner

20   because, among other things, it did not order the District to reimburse Petitioner for the cost of

21   the re-evaluation of the Student under the provisions of the IDEA federal law and the federal and

22   state regulations implementing the IDEA law.   The cost to Petitioner is $300 for the District

23   personnel's consultations with the Student's family physician.

24

25   9.

26   The Respondent has erroneously interpreted a provision of law that required or prohibited

27   a particular action by failing to correctly apply one or more of the following:

28

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 8

1   (a) IDEA – the Individuals with Disabilities in Education Act states that evaluations are

2   part of the special education and related services that are to be provided at public expense and

3   without charge under the definition of a Free and Appropriate Public Education (FAPE) in the

4

5   IDEA law.  20 USC §1401, Sec. 602 Definitions (9).

6   (b) Under state regulations implementing IDEA, the responsibility for evaluation and

7   eligibility determination is the responsibility of the school district (District) OAR 581-015-2100.

8   (c) Under state regulations implementing IDEA, the school district (District) must

9   provide a copy of the evaluation report to the parent at no cost.  OAR 581-015-2120(6).

10

11   (d)  Under state regulations implementing the IDEA 2004 law, consent means that the

12   parent has been fully informed of all information relevant to the activity for which consent is

13   sought; and understands and agrees in writing to the carrying out of the activity for which

14

15   consent is sought (OAR 581-015-2090).  Petitioner was not fully informed and did not

16   understand or agree in writing to the District's initiation of conversations with the Student's

17   family physician for the alleged purpose of explaining the staff reports to him.

18   (e) Under state regulations implementing the IDEA 2004 law, consent for an evaluation

19   may not be construed as consent for related services (OAR 581-015-2090 (3)(a)(A)).  Thus,

20

21   Petitioner's consent to obtain the medical statement as part of the evaluation cannot be construed

22   as consent for any other communications with my son's treating physician.

23   (f) Under the Respondent agency's Procedures for Complaints as Required by IDEA

24   regulations, at OAR 581-015-2030, "[the] Superintendent will review all of the written

25

26   information submitted by the complainant and the public agency to resolve the allegations in the

27   complaint." (OAR 581-015-2030(8).  The Respondent failed to follow this procedure in ignoring

28   the content of Petitioner's correspondence with District.  The Respondent's Investigator did not

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 9

1   inform Petitioner that her written correspondence would be required for him to give credence to

2   her verbal report to him during the investigation.  In any event, the Respondent's Investigator

3   had access to Petitioner's written correspondence with the District in the March 6 large set of

4   documents mailed to him by the District.

5

6        (g) ) Under the Respondent agency's Procedures for Complaints as Required by IDEA

7   regulations, at OAR 581-015-2030, "[the] Superintendent will issue a written decision that

8   addresses each allegation in the complaint and contain findings of fact, conclusions, and reasons

9   for the Department's final decision within 60 days of receipt of the [Petitioner's] complaint…"

10  OAR 581-015-2030 (12).  The Respondent failed to address the Petitioner's allegation that the

11  District failed to provide a Free and Appropriate Public Education (FAPE) at no cost to the

12  parent by failing to reimburse Petitioner for the cost of the District's consultations with the

13  Student's family physician.

14

15                                     10.

16

17       Because the State erroneously interpreted one or more provisions of law, the Court

18  should:

19       (a) Set aside or modify the State's final order pursuant to ORS 183.484(5)(a)(A).

20       (b) Or, in the alternative, remand the order back to the Respondent, namely the office of

21  the State Superintendent for Public Instruction, for further action under a correct interpretation of

22  the law pursuant to ORS 183.484(5)(a)(B).

23

24

25                                     11.

26

27       The Respondent's order should be remanded pursuant to ORS 183.484(5)(b) because the

28  State failed to exercise proper discretion as to one or more of the following:

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 10

1      (a). The Respondent acted without following all of the procedures for complaints as

2  required by IDEA regulations, which acts were inconsistent with an agency rule or an officially

3  stated agency position, at OAR 581-015-2030; and

4      (b) The Respondent acted in violation of the IDEA law governing the provision of a Free

5

6  and Appropriate Public Education (FAPE) to students with disabilities 20 U.S.C. § 1400, *et. seq.*,

7  20 USC §1401, Sec. 602 Definitions (9).

8

9                                 12.

10

11      The Respondent's order should be set aside or remanded pursuant to ORS 183.484(5)(c)

12  because the order is not supported by substantial evidence in the record in one or more of the

13  following particulars:

14      (a) The content of Respondent's Order largely adopts the selective "relevant facts" and

15

16  flawed analysis set forth in the District's letter of March 6, 2014.  For example, with regard to

17  the issues surrounding the Petitioner's consent and authorization of the District to contact the

18  Student's family physician, the Respondent's Final Order, on Page 3, mischaracterizes the

19  Petition as having requested a telephone call from the school psychologist and then having

20

21  requested that the school psychologist contact the Student's physician to "share evaluation

22  information."  This is factually incorrect and fails to take into consideration the extensive written

23  correspondence that shows that Parent requested only that a copy of the written evaluation report

24  be provided to the Student's physician.

25      (b) As another example, with regard to the Petitioner's statement to the Investigator that

26  Petitioner "the District did not explain it would be verbally explaining their report to the

27

28  Student's medical doctor, ... and that a copy of the written reports would have been fine," the

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 11

1   Respondent incorrectly states "However, there is no written evidence in the record to indicate the

2   District was on notice of this." This, too, is factually incorrect and fails to take into consideration

3   the extensive written correspondence that shows that Parent requested only that a copy of the

4   written evaluation report be provided to the Student's physician.

5

6          (c) In that same section of the final order, the Respondent states that the Investigator

7   reported that "[t]he Parent further stated Parent just wanted a copy of a written report so the

8   Parent could talk to the Student's medical doctor about the reports before the IEP meeting and

9   that Parent did not want the District to explain the reports to the doctor.  Again, it is not clear that

10  this information was related to the District based on the documents in the record."  This is

11  factually incorrect for the same reasons cited above.  It also reveals flawed reasoning, since the

12  Parent was under no obligation to expressly state that she "did not want to the District to explain

13  the reports to the Doctor."  Rather, there is an affirmative duty on the part of the District to

14  obtain such permission from the Parent as set out in OAR 581-015-2090.  Indeed, the Petitioner

15  Parent was unaware that the District was intending to "verbally explain" their reports to the

16  Student's family physician, so how could she have known to request that they not do so?  The

17  insistence of the District that the reports be "verbally explained" is particularly baffling to the

18  Petitioner, as the Petitioner has a significant hearing loss, and has consistently conducted her

19  communication with the District in writing.

20

21         (d) The analysis set forth in the Respondent's Final Order build on the flawed fact finding

22  set forth above.  For example, the Final Order Discussion on Pages 4-7 repeatedly refers to the

23  Student's physician having initiated the call to the District when that is not factually supported

24  by the record.  There are repeated references to the Petitioner as having requested that the

25

26

27

28

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 12

1   District verbally explain the reports to the Student's physician, when that is not factually

2   supported by the record.

3 ATTORNEY FEES

4

5         The State has acted without a reasonable basis in law or fact. Petitioner is appearing on

6   her own behalf and has incurred costs.

7         Pursuant to ORS 183.497, Petitioner is entitled to receive and be awarded her costs.

8 REQUEST FOR RELIEF

9

10         WHEREFORE, Petitioner requests the following relief:

11                   A.     Set aside and modify the Final Order; or in the alternative remand

12   to the Agency;

13                   B.     Make any other disposition of the case the Court determines

14   appropriate;

15

16                   C.     Require the State to pay Petitioner's costs under ORS 183.497; and

17                   D.     Make special findings of fact based on the evidence in the record

18   and conclusions of law indicating clearly all aspects in which the agency's order is erroneous.

19

20               DATED: August 4th, 2014

21

22

23

24                       Donna Jo Coningsby, Petitioner

25                         appearing pro se

26

27                   telephone no. (425) 241-3600

28                   donnajoc@frontier.com

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### CERTIFICATE OF DOCUMENT PREPARATION

You are required to truthfully complete this certificate regarding the document you are filing with the court. Check all boxes and complete all blanks that apply:

A. [X]    I selected this document for myself, and I completed it without paid assistance.

B. [ ]    I paid or will pay money to _____ for assistance in preparing this form/document.

Donna Jo Coningsby

PETITION FOR JUDICIAL REVIEW
PURSUANT TO ORS 183.484 - 14

1

2

3

4            IN THE CIRCUIT COURT OF THE STATE OF OREGON

5               FOR THE COUNTY OF WASHINGTON

6   Donna Jo Coningsby,            |   Case No. C144492CV

7          Petitioner,         GENERAL JUDGMENT OF DISMISSAL

8       v.

9   State Superintendent of Public Instruction, an
    Office of the Oregon Department of      **ORS 20.140 - State fees deferred at filing**

10   Education,

11          Respondent.

12

13       The Court having granted Respondent's Motion for Summary Judgment and in

14 accordance with the Court's Order Granting Respondent's Motion for Summary Judgment:

15       IT IS HEREBY ADJUDGED that the final order of Respondent is affirmed and that this

16 case is dismissed with prejudice and without costs or disbursements to either party.

17       DATED this ___ day of June, 2015.

18

19

20                          Honorable ANDREW R. ERWIN

21                          Circuit Court Judge

22 Submitted by: Craig M. Johnson
               Assistant Attorney General

23                Of Attorneys for State of Oregon

24

25

26

Page 1 -   GENERAL JUDGMENT OF DISMISSAL
        CMJ/cre/6555931-v1

1

2

3

4                    IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                        FOR THE COUNTY OF WASHINGTON

6    Donna Jo Coningsby,                        | Case No. C144492CV

7                Petitioner,                     | ORDER GRANTING RESPONDENT'S MOTION
                                                 | FOR SUMMARY JUDGMENT
8         v.

9    State Superintendent of Public Instruction, an
     Office of the Oregon Department of
10   Education,                                  | **ORS 20.140 – State fees deferred at filing**

11                Respondent.

12

13          The Court having considered Respondent's Motion for Summary Judgment, having heard

14   the argument of the parties, and being fully advised,

15          IT IS HEREBY ORDERED that Respondent's Motion for Summary Judgment is

16   GRANTED.

17          Judgment shall be entered affirming Respondent's final order and dismissing the Petition

18   for Judicial Review with prejudice.

19          DATED this ___ day of ~~June~~ July, 2015.

20

21

22

23                                              Honorable ANDREW R. ERWIN
                                                Circuit Court Judge

24   Submitted by: Craig M. Johnson
                   Assistant Attorney General
25                 Of Attorneys for State of Oregon

26

Page 1 -   ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT
           CMJ/cre/6555808-v1

                              Department of Justice
                              1162 Court Street NE
                              Salem, OR 97301-4096
                          (503) 947-4700 / Fax: (503) 947-4792

                                                    EXHIBIT 5, Page 2 of 3
                                                    Case No. 3:16-cv-00627-HZ

IN THE CIRCUIT COURT OF THE STATE OF OREGON
FOR WASHINGTON COUNTY
WASHINGTON COUNTY COURTHOUSE
145 NE 2nd Ave, Hillsboro, Oregon   97124
(503)846-8888

For Americans with Disabilities, please call (503)846-8767

July 8, 2015

CRAIG M JOHNSON
Attorney at Law                          Bar#: 080902
OREGON DEPARTMENT OF JUSTICE
1162 COURT ST NE
SALEM OR 97301

Coningsby Donna Jo/State Superintendent Of Pub
Case#:  C144492CV  C  Civil Other

### NOTICE OF ENTRY OF JUDGMENT

A Judgment Dismissal was entered in the register of the court in the
above-noted case on July 7, 2015.  This judgment does not create a
judgment lien.

This notice is sent in accordance with ORS 18.078.

Client(s) of Addressee:
STATE SUPERINTENDENT OF PUBLIC

CC:
DONNA JO CONINGSBY

RECEIVED
JUL 10 2015
DEPARTMENT OF JUSTICE
TRIAL DIVISION

## CERTIFICATE OF SERVICE

I certify that on May __25__, 2016, I served the foregoing DECLARATION OF

COUNSEL IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS upon the parties hereto

by the method indicated below, and addressed to the following:

Donna Jo Coningsby                         ___ HAND DELIVERY
2400 SW Sandalwood Avenue           _X_ MAIL DELIVERY
Beaverton, OR  97005                       ___ OVERNIGHT MAIL
         Plaintiff Pro Se                        ___ E-SERVE


                                         _____*s/ Craig M. Johnson*_____
                                         CRAIG M. JOHNSON #080902
                                         Assistant Attorney General
                                         Trial Attorney
                                         Tel (503) 947-4700
                                         Fax (503) 947-4792
                                         Craig.M.Johnson@doj.state.or.us
                                         Of Attorneys for Defendant Oregon Department
                                             of Education

Page 1 -   CERTIFICATE OF SERVICE
         CMJ/cbh/7354950-v1